We are ready to hear the first case on our docket. Johnson versus Martin. We're ready to hear from the appellant. You need to, your audio isn't on. There you go. May it please the court, Jim Hankins for the appellant petitioner, Mr. Johnson. The briefs I think encapsulate the issues in this case. There are a couple of things I'd like to emphasize to the court about, particularly about this Batson claim that would complement the brief. The first one is the nature of patterns. And in Batson itself, the Supreme Court has recognized that a pattern of striking minority jurors can constitute a prima facie case of racial discrimination. Now, as a practical matter, when defense counsel is physically present in the moment during jury selection, the nature of patterns is that we see them in the present only by looking at the past. So when a prosecutor strikes a minority juror for the first time, is that a pattern? Well, typically not. And what I'd like to emphasize to the court is that defense lawyers, myself included, and I've done this before, we're not flippant about making Batson challenges. It is, we can just be candid here, it is an accusation that a government lawyer is exhibiting racial animus in open court. Here you have the striking of five minority jurors in a row, is that not right? Or at least five minorities, whether they were in a row or not, I don't recall. That is when defense counsel raised the question of whether or not that was too much. That's correct. And that's kind of the point I'm making is that, and I've done this myself in jury trials, sometimes you let some of it go because you're not really sure. But there's a and that informs how the record is presented in the appellate courts. Now, in this case, this case is a 2254. And so we're looking at the ruling of the OCCA. Did the OCCA err in their handling of this case? Well, of course they did. In what way? Well, by misapplying Batson in I would say an irrational way. We have a summary opinion here, which is basically one paragraph with conclusions devoid of really of any analysis. The primary way is that, and this is actually fairly shocking to me, the Court of Criminal Appeals viewed this the trial court, you know, when it came time for the prosecutor to strike the last African American juror on the panel, it was the trial court that actually said, wait a minute, I didn't see a pattern when you were striking them all before, but now you want to clear them all out. So I'm not going to let you do that. In our view, that is a implicit, if not explicit finding of a pattern of racial discrimination. The Court of Criminal Appeals viewed that and said, well, the trial court erred in even doing that to the detriment, and I want to read it, to the detriment of the state, which... Did the OCCA correctly find the facts in this case? Not in our view, Your Honor. The summary opinion in our view expresses legal conclusions. And in particular, if we're applying the AEDPA, there should be no deference because, well, even if there is deference, the conclusions, the legal conclusion reached is unreasonable because Batson sets forth an analytical framework, and there's a reason why the Supreme Court did it that way. Because is there a prima facie showing? If so, it is the duty of the trial court to inquire of the prosecutor to articulate a race-neutral reason. Can I stop you there, counsel? Because isn't that kind of the problem, is that your argument you're making here, and you did make it at the post-conviction level, but you didn't make the argument at the direct appeal level that you're making now, which is that step two, at step two, it's the prosecutor who must state his race or her race-neutral reasons. And here, the district court stated, essentially stated them, but you didn't object to that at the direct appeal level. And the state points that out now in their briefing now, that this wasn't the basis for your objection, and I don't see that you really responded to that in your reply brief. And isn't it procedurally barred by not raising it on direct appeal? No, Your Honor, I believe it, are you talking about the direct appeal in the well, I believe it was raised, Judge. I believe it's encapsulated in the entire Batson claim. Well, I wasn't direct appeal counsel. I understand, but I do think it's different, the way I read your direct appeal claim and the claim that the OCCA ruled on, you didn't, you didn't discuss the fact that it was the judge who essentially provided the reasons versus the prosecutor. And if I'm understanding your claim correctly, that's sort of the essential aspect of your claim at this point. Well, it's not the essential aspect of the claim. It's the reason why the opinion of the Court of Criminal Appeals is incompatible with Batson. I mean, that's just... Well, I'm not sure that the Court of Criminal Appeals understood that point because I'm not sure you specifically made that argument. Maybe put it, put another way, was Batson fully raised before the OCCA? I guess that would be the only way you get to the point of whether or not you argued that the trial judge relied on his own reasons. Well, it was raised and decided by the Court of Criminal Appeals is, I mean, the record shows what it shows. The Court of Criminal Appeals cited Batson, cited Snyder, and ruled that there was no, even an indication of racial discrimination. Well, the point is, I think, that it is how was Batson violated? And I think you're arguing something different here than was argued on direct appeal. Is that not right? No, Your Honor. I disagree with that. I have a question, counsel. Do we know the racial makeup of the jury? Not from the record. I do not, Your Honor. And how do we decide anything? My other question is, when you say minorities, are you talking about all African Americans or were some of them Hispanic? That is also unknown. That's why... It's very difficult to say there's a Batson problem here because we don't know how many minorities were left on the jury. We know what trial counsel said. Trial counsel objected to five out of the six. And we know what the reaction was of the district of the trial court. Judge Gillert didn't say you're wrong about that. Judge Gillert said, okay, that may be true, but I don't detect that as a pattern. And the prosecutor in this case didn't pipe up and say, defense counsel, you're wrong. But those are the people that didn't get on the jury that we know about. We don't know what's left, do we, in terms of minorities? Well, I don't know that that is even relevant under Batson. The evil that we're combating here under Batson, the Supreme Court has told us is the racial strikes themselves, not the composition of the jury. The ultimate composition of the jury, I don't think is part of the Batson analysis. Well, but if the remaining jurors are 50% African-American, 60% African-American. Well, again, I think the final composition is not really the focus of a Batson issue. The second thing I'd like to point out is a cumulative error issue was granted, or certificate of appealability. And there is, in our view, a credible claim by a juror that Mr. Johnson was convicted, in her words, on the basis that he was, quote, unquote, black. So sometimes in these Batson claims, it is difficult, and maybe this goes to your question, it is difficult to determine the prejudice, what is the harm, apart from just the racial strike itself. I think we have a unique case here where I think we can show the harm. And to go to your question, if there was a more diverse jury panel, would racial considerations be part of the jury sentencing calculus? I think it's very unlikely not. And then you have to, and I have to emphasize, you know, Judge Gillert refused to allow the state, even if he's finding no racial discrimination, he's not allowing the state to strike the last African American juror. To me, that says a lot. It really drives the point home here. So that we do know, then I was looking for that comment by the district by the trial judge. And that is, and I quote, well, you would have effectively eliminated all of the African Americans, and I'm not going to do that. So we know that there was one black juror. Correct. But to Judge Seymour's point, we don't know if there were other minorities on the jury. That is correct, Your Honor. But you're saying that's not the point. It's how you select the jury, not who's remaining on the jury. Well, that's the point that that's the point the Supreme Court emphasized in Batson, yes. Right. One other aspect of the case, and this is the, I guess, goes to the gruesome photographs or gruesome testimony claim. And I got to be honest, this claim very rarely gets any traction, much less a certificate of appealability in this court. But, you know, I think there is a reason for that. The, you know, number one is the testimony and the photographs were clearly excessive. But the main point is, there was no dispute during the trial. Factually, Mr. Johnson did not personally commit the murder here. Very attenuated and tangential part he had, if you believe the state's theory of this case. So when the court considers this issue, there's a reason why, you know, when Defense Counsel, and I've done this myself at trial, will stipulate that there's a death will stipulate to the manner. We're not contesting any of it. And typically, the prosecutor will say, No, we want to put on all this evidence. There's a reason why the prosecutor does that. And it's because they can make the closing argument that they made here and emphasize this sort of evidence that is based on an emotional reaction to lay who are not accustomed to hearing graphic descriptions like that, much less seeing it in color photographs. So that there is in this case, I think the Batson claim is very clear to me, but the other claims are as well. And then when they're when you component to the issues in this case, there is palpable prejudice on all of them. I see him about out of time. I think that's thank you. Pretty much all I have to say unless there's some questions. Thank you. We'll hear from the appellee. May it please the court. I'm Tessa Henry from the Oklahoma Attorney General's Office on behalf of the respondent Jimmy Martin. So I'd first like to talk about petitioners Batson claim. And I think it's very helpful to go through the specific facts of this claim to clearly show that this claim is meritless. So I'm going to go really quickly through the prosecutor's brimfold. And I'm going to go through the three strikes. So first, the prosecutor struck Mr. Twill. And then he struck Mr. Dickens. And as he struck Mr. Dickens, the trial court sua sponte requested a race neutral reason from the prosecutor because Mr. Dickens was black. The prosecutor provided the race neutral reason that Mr. Dickens was a English professor. He had a PhD in liberal arts. And in his experience, such jurors were too exacting and he didn't want someone like that on the jury. From there, he struck Mr. Wassam, Ms. Wilson, Ms. Carranza, and then Ms. Martinez. It was at that point that defense counsel raised a Batson objection and argued that five of the six peremptory strikes so far of the prosecutor had been of minority jurors. And isn't that a big deal? It just looks like one. That was all he offered as far as argument to the trial court, just simply the number. And we don't have anything specific as to what minority these jurors were. We know for sure that... Well, wouldn't that be enough to establish a prima facie case, which should cause the court then to inquire of the prosecutor what the race neutral reason is for the strike? In some instances, perhaps. But here, we're giving the trial court a great amount of deference because the trial court is the one that's watching this, that can gauge credibility. And the trial court was faced with simply an argument of, well, here's five of six jurors. But the trial court could see that there were obvious reasons on the record for why the prosecutor struck these prospective jurors. That's not the trial court's role, though, is it? Not under Batson. It's a three-step process. Yes, it is a three-step process. But the first step is for the petitioner to present a prima facie case and raise the inference of discrimination to the trial court. And because the petitioner argued nothing more than the number, and because the trial court could see neutral reasons on the record, the trial court clearly did not see discrimination in an inference. I'm sorry. Okay. So what about the fact that the trial court, first sentence, he says, well, I don't think that establishes a pattern. The next sentence, again, in terms of Ms. Martinez, I won't state their reasons for them. Meaning, the trial court seems to be saying, I'm going to ask the prosecutor for reasons. I'm not going to state them for the prosecutor. And then what does the court do? It proceeds to state the reasons, apparently. What else would you call that? When it then says, but Ms. Martinez, she was involved in the process. Ms. Carranza had difficulty with English. On it goes. What would you call that, other than stating the reasons when he says, I'm not going to state the reasons, but then he does? That was the trial court finding no inference of discrimination on behalf of the prosecutor by pointing to those obvious neutral reasons on the record for why these jurors were struck. The trial court didn't feel it necessary to go further to step two to request race-neutral reasons from the prosecutor because the trial court didn't feel that a prima facie case had been made. So basically, I'm not going to state the reasons for them because I don't need to, because it's obvious. Is that what you're suggesting we would infer there? Yes. And the trial court's observations are absolutely supported by the record. He specifically talked about Ms. DeWassam and Ms. Carranza's difficulty with the English language. And earlier in voir dire, the prosecutor had actually attempted to strike Ms. DeWassam for cause because of the English language barrier. English was her second language and she had only been speaking it for about 15 years. And she said she felt uncomfortable and didn't know if she'd be able to understand everything. So clearly when you have that from the prosecutor previously trying to strike her for cause, that's obviously a neutral reason on the record that the trial court can see. What was the, remind me what the Ms. Martinez, the trial court said, she was hardly involved in the process. What did that mean? There are several different things from the record. First of all, she explicitly said she didn't want to be on the jury. She also mentioned that she didn't believe it was fair that her brother was jailed for a DUI. She didn't think jail was appropriate. And then in other instances during voir dire, she just didn't seem interested and she would respond with very short responses. She just wasn't engaged like the other prospective jurors were engaged in the process. Well, that sounds like something to me the trial court should have inquired about the prosecutor. Apparently there might be several reasons why the prosecutor might have struck Ms. Martinez, but we don't even know what those were because we've got this general statement. She was hardly involved in the process. Yes, but I think that is absolutely supported by the record. But that's not what Batson tells us to do. The whole point is whether or not jurors are being struck for a racially discriminatory reason. That is, what is the motivation of the prosecutor? It's not what the judge thinks. It's what is the motivation of the prosecutor, which is the question that the judge should be asking of the prosecutor. Right? Is that a correct reading of Batson? Well, I think if the inference of discrimination is not raised to the trial court, the trial court can fairly decline to go to step two of Batson. And I'll quickly quote a case. I was going to say, can you discuss what case law you rely on for that, please? So, Johnson versus Campbell from the Ninth Circuit is one case where the court stated that there was the presence of obvious reasons for the preemptory challenge on the record. And the trial court didn't find, based upon that, that there was a prima facie case made. And the court agreed that the trial court did the right thing and not pursuing the matter to the second step of Batson. What were the obvious reasons in that case? I'm not sure, Your Honor. I do not recall. Is the Batson issue procedurally barred? A portion of it, yes. Petitioner did raise this Batson claim on direct appeal. However, petitioner only focused on the prosecutor's race-neutral reasons that were offered and argued that the race-neutral reasons were untenable and that the trial court shouldn't have found a lack of discrimination. He did not, however, raise the argument that the trial court improperly imagined race-neutral reasons for the prosecutor. That was not raised on direct appeal and was not raised to the Court of Criminal Appeals. Is it enough for the appellant to say Batson has been violated here? No, not necessarily, especially when he focused his argument on such a specific piece of Batson. Much of his proposition was discussing juror Dickens and how the prosecutor's race-neutral reasons were illegitimate. But Johnson did argue on direct appeal that the prosecutor in violation of Batson systematically and intentionally removed minorities from the jury. Is that not right? Yes, he did argue that. Did the OCCA correctly determine the facts on how they did? Yes. The Court of Criminal Appeals reasonably determined that petitioner had not shown discrimination on the part of the state. The Court of Criminal Appeals specifically cited Mitchell v. State. The paragraph that they cited lays out the three Batson steps. They also cited to Batson itself. The Court of Criminal Appeals also found that the state's explanations, the race-neutral reasons offered by the state when it did offer race-neutral reasons were legitimate. The trial court reasonably found no discrimination. Did they say that the prosecutor gave the reason at the second step? They did say the state's explanation for excusing minority jurors. Is that factually correct? The state did offer, yes, two race-neutral reasons during the Batson challenge. First, well, go ahead. First, as to Juror Dickens, which we've already discussed, the PhD, and then when the prosecutor attempted to strike Juror Williams as his eighth preemptory, he himself provided his own race-neutral reason based upon the fact that Juror Williams was Black and he reasoned that she was a pastor and perhaps wouldn't be willing to impose judgment upon petitioner and that she had worked with drug addicts in the past and perhaps would favor treatment rather than imprisonment in most cases. However, even though that was a race-neutral reason, the trial court did not allow that strike. What do we do with the trial court in this case giving its own reasons? And does the, does OCCA acknowledge that that is what happened? Factually? They do not explicitly discuss the trial court finding obvious neutral reasons on the record, no. But again, that aspect, that specific aspect of that claim was not raised to them on direct appeal. It was not raised until... Well, they concluded that the prosecutor gave a race-neutral reason. And when we look at the record and see in several of these instances, there was no race-neutral reason given by the prosecutor, but instead it was given by the trial court. Isn't that an error of fact? No, no, because there were clear race-neutral reasons offered by the prosecutor as to juror Dickens and juror Williams. Well, he offered the, he offered the juror Dickens reasons because the trial court asked for them, first of all. Yeah. Yeah. Yes. Defense counsel, and we don't, and he didn't, we don't have anything from the prosecutor on at least what, three? How many of them? Three? We have nothing, nothing at all from the prosecutor as to the race-neutral reasons for three, and the objection was to the pattern. And so presumably that's the objection that the OCCA was dealing with. And so the OCCA clearly did misstate the facts if, if, if they suggest that the prosecutor gave race-neutral reasons as to the pattern objection. The prosecutor said nothing at all on three of these individuals. The prosecutor said nothing because petitioner had not shown a prima facie case of discrimination, had not raised an inference of discrimination in the trial court's mind. Maybe the prosecutor said nothing because the trial judge had already said it for him. Okay. So you're saying in this case, there's absolutely no evidence of a pattern of racial discrimination in the striking of jurors. No. And we have to know what that is your view. There is no prima facie case here. No, not as to the bath and objection raised by petitioner. And that comes from, we have to give the trial court a great amount of deference in these bats and claims because they are there and they are experiencing it. And they're viewing it firsthand and can judge the credibility of the prosecutor, can judge the credibility of their prospective jurors. So we have to give the trial court a great amount of deference as well as the court of criminal appeals as far as this bats and claim. Um, and with that, I see I'm out of time. So we would respectfully request that this court affirm the district court's denial of habeas relief. Thank you, Mr. Hankins. You have 48 seconds. Like to address this procedural default issue with respect. It sounds like, uh, your honor is conflating your role in a federal direct appeal where trial counsel doesn't say the words appropriately. And is that plain error? Procedural default is did a state appellate court impose a procedural rule to not address the merits of a claim? The Oklahoma court of criminal appeals did not invoke any procedural rule. It did not borrow the claim at all on any procedural matter. It addressed it on the merits. And as the Supreme court has told us, the court of criminal appeals doesn't even have to be aware of that. It just has to issue an opinion, and this court has to review that opinion, and it can't be squared with Miller L. B. Dredke or Flowers v Mississippi. Thank you. Thank you both for your arguments this morning. They're very helpful. The case is submitted.